UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ESTATE OF KEITH J. HOPKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:21-cv-157 |
| | ) |
| CLEVELAND-CLIFFS STEEL LLC, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion For Summary Judgment [DE 29] filed by the defendant, Cleveland-Cliffs Steel LLC's ("Cleveland-Cliffs"), on May 15, 2023. For the following reasons, the Motion for Summary Judgment is **GRANTED.**

*Background*

On July 12, 2020, Keith Hopkins, a shift worker at ArcelorMittal[1] in East Chicago, Indiana, suffered a stroke in the employee break room. ArcelorMittal paramedics attended to him and transported him to a local hospital, where he was discovered to have a large brain hemorrhage with a poor prognosis for recovery. Hopkins died on July 20, 2020. His estate brings a claim under the Indiana Wrongful Death Act, alleging that ArcelorMittal caused his death because the paramedics arrived late and did not provide him with appropriate care.

Cleveland-Cliffs seeks dismissal of the claim, arguing that the Indiana Workers' Compensation Act ("IWCA") provides the exclusive remedy to the Estate; that ArcelorMittal's paramedics met the appropriate standard of care; and that there was nothing the paramedics could

---

[1] Before this lawsuit was filed, ArcelorMittal Indiana Harbor, LLC, merged with another entity and changed its name to Cleveland-Cliffs Steel, LLC. *See* [DE 16, DE 30 n. 1]. The defendant in this case is Cleveland-Cliffs, but the court, like the parties, refers to Hopkins's employer as "ArcelorMittal."

have done to save Hopkins given the injury he had suffered. In responding to the motion, the Estate sought leave to reopen discovery to depose two potential witnesses. Because the IWCA precludes any other claim against Cleveland-Cliffs, including a wrongful death claim, the court denies the Estate's request to reopen discovery, grants summary judgment, and dismisses the case.

*Undisputed Material Facts*[2]

Hopkins was employed by ArcelorMittal in its East Chicago, Indiana plant. On July 12, 2020, Hopkins collapsed in the break room. [Def. Ex. B, Deposition of Felita Hopkins, 34:20-24, 42:15-19]. No party alleges what Hopkins was doing when he collapsed, but the Estate does not contend that any negligence on ArcelorMittal's part caused the incident. [*Id.* 33:16-20]. ArcelorMittal paramedics responded to aid Hopkins. The person who made the emergency call, who is not identified in the record, "suspected that Hopkins was having a health event related to diabetes." [Def. Ex. C, Declaration of William Webb, ¶ 6].

The parties dispute the facts surrounding the emergency care that the paramedics provided to Hopkins. Paramedic William Webb stated the call for help was made at 6:59 p.m., and that he arrived with another paramedic at 7:07 p.m. Webb suspected that Hopkins was having a stroke, because his face was drooping and the right side of his body was flaccid. The paramedics assessed Hopkins, checked his blood sugar and vital signs, gave him intravenous fluids and oxygen, and prepared him for transportation by ambulance. The ambulance left for St. Catherine Hospital, in East Chicago, at 7:25 p.m., and arrived at 7:34 p.m. This timeline was recorded in an "Ambulance Report," which was prepared by ArcelorMittal dispatch personnel based on information reported by the paramedics. [Webb Decl. ¶¶ 12-13].

---

[2] The following facts are undisputed unless otherwise indicated.

In response, the Estate "contests the times recorded" by ArcelorMittal. However, the Estate's Response to Cleveland-Cliffs's Statement of Material Facts has no factual allegations of its own about the paramedics' performance, other than general statements that it disputes ArcelorMittal's timeline. *See* [DE 33 ¶¶ 3-15]. The court infers from the briefing that the Estate believes the paramedics did not attend to Hopkins until at least an hour after they were called. Felita Hopkins, Hopkins's widow, testified that at his wake two of his co-workers told her that "it took over an hour" for the paramedics to arrive and that ArcelorMittal's report was changed to say that they responded within three[3] minutes. [Hopkins Dep. 39:1-6, 39:22-40:21]. Although this fact is not properly alleged, *see* N. D. Ind. L. R. 56-1(b)(2)(D), the court will consider the Estate as having made that allegation based on Hopkins's deposition testimony.[4]

The events following Hopkins's arrival at the hospital are undisputed. Hopkins underwent a brain CT scan, which showed a "large left sided basal ganglia intraparenchymal hemorrhage." Dr. Armita Bijari, a neurologist who reviewed the ArcelorMittal and hospital records, concluded that the hemorrhage "was very large with extremely grave prognosis at onset" and that Hopkins developed the hemorrhage because of his pre-existing conditions of hypertension, diabetes militius, and renal failure. Hopkins was transferred to Community Hospital in Munster, Indiana, because St. Catherine did not have neurosurgery coverage and he needed "a higher level of care." Despite surgery and other treatments attempted at Community Hospital, Hopkins died on July 20,

---

[3] Ms. Hopkins later acknowledged that the report shows the paramedics arriving within eight minutes, not three. The reference to three minutes arose from an apparent misstatement from counsel questioning Ms. Hopkins. The distinction does not affect the outcome of the motion.

[4] In disputing the timeline, the plaintiff frequently cites to "Document 6 P12-13," without further explanation. *See*, *e.g.*, [DE 33 ¶¶ 10-15]. The Court is unable to discern what "Document 6" refers to; Docket Entry 6 is Cleveland-Cliffs's answer to the operative complaint, which does not have a page (or paragraph) numbered 12 or 13. Perhaps Plaintiff intended to cite to Ms. Hopkins's deposition testimony [DE 31-2], and specifically to pages 12 and 13 as paginated by the ECF filing system [37:1-44:25].

2020. Based on the timeline presented in the records[5], "[n]othing different could have been done for him by the paramedics or hospital staff that would have changed the outcome." [Def Ex. D, Declaration of Armita Bijari, ¶¶ 7-11].

The Estate filed this complaint on April 8, 2021, alleging that "Arcelor Mittals [sic] gross negligence and wanton disregard for health and safety" caused Hopkins's death, and brings a claim under Indiana's wrongful death statute, Ind. Code § 34-23-1-1.

## Discussion

A challenge based on the exclusivity provision of the IWCA is properly evaluated as a motion to dismiss under **Federal Rule of Civil Procedure 12(b)(6)** for failure to state a claim. ***Goetzke v. Ferro Corp.***, 280 F.3d 766, 778-79 (7th Cir. 2002); *see also* ***Tacket v. Gen. Motors Corp.***, 93 F.3d 332, 334 n.9 (7th Cir. 1996); ***Johal v. FedEx Corp.***, No. 1:22-CV-00716-JRS-MG, 2022 WL 10075380, at *3 (S.D. Ind. Oct. 17, 2022); ***Johnson v. Town of St. John***, No. 2:15-CV-417-JD, 2017 WL 1165210, at *1 n. 1 (N.D. Ind. Mar. 29, 2017). Motions under **Rule 12(b)(6)** are generally resolved on the allegations in the pleadings. However, Cleveland-Cliffs has presented its exclusivity argument as a request for dismissal for lack of subject matter jurisdiction under **Rule 12(b)(1)** and premises its argument on facts in the summary judgment record. *See* ***Tippmann v. Hensler***, 716 N.E.2d 372, 375 (Ind. 1999) (explaining that claims that the Workers' Compensation Act bars a plaintiff's complaint is an attack on subject matter jurisdiction). Accordingly, the court cannot rule on the merits of the claim without first resolving the issue of subject matter jurisdiction.

---

[5] Dr. Bijari's opinions were premised on ArcelorMittal's recorded timeline indicating that paramedics were called at 6:59 p.m. and arrived at 7:07 p.m. *See* [DE 31-4 at 5 (Bijari Decl. Ex. 2)]. Dr. Bijari did not say whether her conclusion would change if in fact the paramedics had arrived later than recorded.

Normally, when evaluating a motion to dismiss, the court must read the complaint liberally and accept the well pleaded facts as true. ***Sapperstein v. Hager,*** 188 F.3d 852, 855 (7th Cir. 1999). Although recovery may appear unlikely, the court must allow a claim to proceed where the allegations in the complaint demonstrate that the pleader may be entitled to relief. ***Sapperstein,*** 188 F.3d at 855. A party may attack subject matter jurisdiction by making either a facial attack, arguing that the allegations in the complaint do not give rise to jurisdiction, or by making a factual attack. A factual attack is a challenge to the factual basis supporting subject matter jurisdiction. ***Villa-senor v. Industrial Wire & Cable, Inc.,*** 929 F. Supp. 310, 312 (N.D.Ill.1996). When presented with a factual attack "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." ***Ezkiel v. Michel,*** 66 F.3d 894, 895 (7th Cir.1995); ***Villasenor,*** 929 F. Supp. at 312. "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." ***Sapperstein,*** 188 F.3d at 855. When the defendant raises a question to the court's jurisdiction, the plaintiff must come forward with evidence showing that the court retains jurisdiction. ***Sapperstein,*** 188 F.3d at 855.

Under the IWCA, "[t]he rights and remedies granted to an employee . . . on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death . . ." **Ind. Code. § 22-3-2-6**. Therefore, workers' compensation "is the exclusive remedy for an employee subject to the Act, and it abolished all common law actions against an employer likewise subject to the Act." ***Herrera***, 2011 WL 5040700, at *2 (citing ***Sims v. United States Fid. & Guar. Co.***, 782 N.E.2d 345, 349-50 (Ind. 2003)). Wrongful death

5

claims are precluded for injuries covered by this provision. *See*, *e.g.*, **Johal**, 2022 WL 10075380; **Summers v. Crossroads Galvanizing**, *LLC*, No. 4:21-CV-074-PPS-JEM, 2022 WL 3595014, at *3 (N.D. Ind. Aug. 22, 2022).

A personal injury falls under the IWCA if it occurs (1) by accident (2) arising out of and (3) in the course of employment. **Sims**, 782 N.E.2d at 349. The Estate does not contest that this was a personal injury occurring by accident. While the Estate alleges that Hopkins died due to ArcelorMittal's "negligence" and "wanton disregard" for health and safety [DE 3 ¶ 5], there is no allegation or evidence that ArcelorMittal intended harm to Hopkins.

There is some overlap between the second and third elements. In general, "arising out of" refers to whether the accident itself was caused by work or sufficiently related to work, and "in the course of" refers to the time and place, i.e., whether the accident occurred in or around the work environment. *See* **Arnold v. Rose Acre Farms, Inc.**, 966 N.E.2d 107, 110 (Ind. Ct. App. 2012) ("The 'arising out of' element refers to the causal connection between the accident and the employment, while the 'in the course of' element refers to the time, place, and circumstances of the accident.") (citing **Smith v. Bob Evans Farms, Inc.**, 754 N.E.2d 18, 24–25 (Ind. Ct. App. 2001)).

"An accident occurs 'in the course of employment' when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." **Milledge v. Oaks**, 784 N.E.2d 926, 929 (Ind. 2003) (citing **Tanglewood Trace v. Long**, 715 N.E.2d 410, 413 (Ind. Ct. App. 1999)). For purposes of the IWCA, employee breaks are considered incidental to the duties of employment. **Wine-Settergren v. Lamey**, 716 N.E.2d 381, 383 (Ind. 1999); *see also* **Constr. Mgmt. & Design, Inc. v. Vanderweele**, 660 N.E.2d 1046, 1049 (Ind. Ct.

App. 1996) (citing **Thiellen v. Graves**, 530 N.E.2d 765 (Ind. Ct. App. 1988) (injury sustained during lunch break occurred in the course of employment)); **Lawhead v. Brown**, 653 N.E.2d 527, 529 (Ind. Ct. App. 1995) ("[T]he period of employment includes a reasonable time before and after the employee engages in work.").

It is undisputed that Hopkins's injury occurred in the break room and that ArcelorMittal provided the break room for its employees. Therefore, the employees' use of the break room was in the course of employment. *See* **Wine-Settergren**, 716 N.E.2d at 390 ("The accidental injury occurred during the parties' regular working hours and in a vending machine room on the employer's premises where Lamey could reasonably be expected to be . . . [t]herefore, the injury occurred in the course of his employment.").

Finally, an injury "arises out of" employment when a causal nexus exists between the injury and the duties or services performed by the employee. **DePuy, Inc. v. Farmer**, 847 N.E.2d 160, 164 (Ind. 2006). An employee's services are deemed to include "personal acts of employees which are reasonably necessary to their life, comfort or convenience, even though such acts are not technically acts of service." **Indiana Michigan Power Co. v. Roush**, 706 N.E.2d 1110, 1114 (Ind. Ct. App. 1999). "For example, where an employee is washing up after work, satisfying his thirst, seeking fresh air, answering telephone calls, eating lunch, or going to the toilet, such personal acts have been held to be in the pursuit of personal comfort or convenience and thus incidental to employment." **Wine-Settergren**, 716 N.E.2d at 389–90 (quoting **Indiana & Michigan Elec. Co. v. Morgan**, 494 N.E.2d 991, 993 (Ind. Ct. App. 1986)). The "health, comfort and convenience rule" also incorporates injuries sustained "through the administration of in-plant medical or emergency services that are provided as incidental to the employment." **Hardin v. Gen. Elec. Co.**, No. IP02-0993-C-B/S, 2003 WL 23104228, at *3 (S.D. Ind. Dec. 12, 2003) (quoting **Tarr v.**

7

*Jablonski*, 569 N.E.2d 378-79 (Ind. Ct. App. 1991)); *McDaniel v. Sage*, 366 N.E.2d 202, 205 (Ind. Ct. App. 1977) ("The [medical] services supplied by the employer in such a circumstance are reasonably necessary for the health, comfort, and convenience of workmen.").

The Estate does not contend that any act or negligence by ArcelorMittal caused Hopkins to collapse. Rather, the Estate seeks compensation for the deterioration of Hopkins's condition, allegedly caused by the paramedics' delayed arrival and by "[un]qualified [] personnel . . . not properly equipped to handle Hopkins's medical emergency." *See* [DE 3 ¶ 4 ("The emergency response team . . . [caused] severe medical injuries to Hopkins which eventually led to his death.")]. Because ArcelorMittal provided the paramedics to attend to injured employees, any injury caused by the paramedics would have been sustained "through the administration of in-plant medical or emergency services [] provided as incidental to the employment," and would be covered by workers' compensation. *Hardin*, 2003 WL 23104228, at *3. The fact that Hopkins himself did not affirmatively decide to seek treatment is not relevant. *See id*. at *4 ("Application of the health, comfort and convenience rule cannot turn on . . . whether the employee is physically able to visit the health clinic or whether emergency personnel must come to him. In either case, the employer has provided on-site medical assistance that it expects its employees to utilize."). Therefore, the injury for which the Estate seeks compensation arose out of and in the course of employment, and the IWCA provides the exclusive remedy.

The Estate also argues that the court should "exercise supplemental jurisdiction in this matter and retain the case." [DE 34 at 2-4]. Supplemental jurisdiction exists if there are two separate claims arising out of the same "case or controversy." **28 USC § 1367(a)**. If the district court has jurisdiction over one of the claims, it may exercise supplemental jurisdiction over the

second claim. *See generally* **Boim v. American Muslims for Palestine**, 9 F.4th 545, 551 (7th Cir. 2021); **Rothman v. Emory University**, 123 F.3d 446, 454 (7th Cir. 1997).

In this case, supplemental jurisdiction is lacking for two reasons. First, this court does not have subject matter jurisdiction over the wrongful death claim. Second, the plaintiff only has a single claim, so the court cannot exercise supplemental jurisdiction over a nonexistent claim.

In addition to its exclusivity argument, Cleveland-Cliffs sought summary judgment because the Estate failed to provide evidence that the ArcelorMittal paramedics caused Hopkins' death or departed from the standard of care. [DE 30 at 9-12]. Specifically, Cleveland-Cliffs argued that Ms. Hopkins' testimony of the co-workers' comments about the paramedics' delayed arrival was inadmissible hearsay, insufficient to establish an issue of material fact at summary judgment. [DE 37 at 4-6]. In its response, the Estate has asked the court to reopen discovery "for the sole purpose of taking the depositions of the two eyewitnesses" [DE 34 at 4], presumably so their testimony could be obtained in an admissible form.

Because the claim is dismissed on other grounds, the court does not resolve the arguments about causation or the duty of care, but briefly addresses the Estate's request to reopen discovery. The court has twice denied the Estate's requests to extend discovery deadlines to depose these witnesses. [DE 21, 24]. In those orders, the court explained that the discovery schedule can only be extended for "good cause," **Fed. R. Civ. P. 6(b)(1), 16(b)(4)**, which exists when "despite a party's diligence, the deadlines could not reasonably have been met." **Simstad v. Scheub**, No. 2:07-CV-407, 2014 WL 5094142, at *1 (N.D. Ind. Oct. 10, 2014). The Estate disclosed these witnesses in its own written discovery responses, based on their discussion with Ms. Hopkins at the wake. This is contrary to its initial representation that they were "uncovered" during her deposition. [DE 19 ¶ 6; DE 21 at 2]. While the Estate has subsequently argued that "'[t]he value

9

of the two eyewitnesses' potential testimony was not realized" until the deposition, the court found that the deposition testimony essentially "mirrored the Estate's own discovery responses; the Estate had identified those two co-workers as the only people that [Felita] Hopkins had spoken to about the incident." Nonetheless, the Estate waited until the last days of discovery to pursue depositions. Ultimately, the Estate did not show good cause to extend discovery. [DE 24 at 2-3].

Since the wrongful death claim cannot proceed on the merits, there would be no purpose in reopening discovery. There is no suggestion that this witness testimony would call into question whether the injury arose out of and in the course of employment. A party can also request additional time for discovery to oppose summary judgment if it "shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition." **Fed. R. Civ. P. 56(d)**. However, the Estate's request was not presented under **Rule 56(d)**, did not include an affidavit or declaration, and ultimately would have been denied for the reasons described above. *See* ***Smith v. OSF HealthCare Sys.***, 933 F.3d 859, 865 (7th Cir. 2019) ("[A] court need not delay decision on a summary judgment motion to allow time for discovery on an obviously meritless claim or defense.").

### *Conclusion*

For the reasons described above, Hopkins' claim is subject to the exclusivity provision of the Workers' Compensation Act, and Cleveland-Cliffs' motion for summary judgment [DE 29] is **GRANTED**. The court and **DENIES** the Estate's request to re-open discovery [DE 34].

So ORDERED this 14th day of March, 2024.

s/ Andrew P. Rodovich
UNITED STATES MAGISTRATE JUDGE